## POLLOCK v. SIMON.

(District Court, E. D. Pennsylvania. June 30, 1913.)

### No. 899.

BANKRUPTCY (§ 279*)—VOIDABLE TRANSFER OF PROPERTY—GIFT OF ENGAGE-
MENT RING.

> The gift by an insolvent, within four months prior to his bankruptcy, of a diamond ring to the woman to whom he was engaged to be married, was a transfer of property in violation of the bankruptcy law, although made in good faith and without knowledge or belief by either party of his insolvency, and the ring or its value is recoverable by his trustee.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. § 279.*]

In Equity. Suit by W. C. Pollock, trustee in bankruptcy of B. F. Baker, against Sarah Simon. Decree for complainant.

Frank G. Sayre and H. H. Farley, both of Philadelphia, Pa., for trustee.

Harry Fox, of Philadelphia, Pa., for defendant.

J. B. McPHERSON, Circuit Judge. The primary object of this suit is to obtain possession of a diamond ring that cost the bankrupt $350 and was given by him to the defendant within four months preceding the adjudication. The facts are these:

The bankrupt presented the ring early in January, 1912, and went into voluntary bankruptcy about three months afterwards. The occasion was the announcement of his engagement to marry the defendant, and there was nothing unusual either about the fact that a gift was made or (considering the social position of the parties, and the supposed financial condition of the bankrupt) about the cost of the ring.

The defendant gave no consideration; the usual reciprocal promises to marry had previously been exchanged, and the transaction was therefore purely voluntary. Of course, the absence of consideration would be unimportant if the bankrupt had been solvent at the time; but the evidence compels the conclusion that his debts were then greater than the fair value of his property. It is only fair to the defendant to say that she had no knowledge, and no reason to believe, that the bankrupt was even in embarrassed circumstances; and it is only fair to him to say that he probably took an optimistic view of his financial condition, and persuaded himself into the belief that he had enough property to pay his debts as well as to make the gift. I find, also, that he had no actual intent to hinder, delay, or defraud his creditors; but this is not decisive, since he was in fact insolvent at the time. Being insolvent, the law denied him the right within four months of his bankruptcy to take $350 of what was practically the money of his creditors and make a present of it to the defendant. No one would contend that he could make such a use of actual cash, however innocent the state of his mind might be; and the principle is the same, even if the money assume the shape of an engagement ring. The actual result of what he did is the important test, and the actual result has been that the defendant is now enjoying the possession of money (or money's worth) that was charged with a trust in favor of the bankrupt's creditors. The case does not seem to need prolonged discussion. In view of the customs that commonly govern the conduct of betrothed persons, there is some sentimental hardship about the conclusion; but the legal principles referred to seem to free the question from doubt. After all, a man must be just before he is generous; he should be generous with his own money, and not with the money of his creditors; and, while he may sometimes have plausible reasons to believe that he is the owner of money that really belongs to them, he may be mistaken in so believing (as he was in the present case), and a court may therefore be bound to correct the mistake.

A decree may be entered directing the defendant, on or before July 20th, either to deliver the ring to the plaintiff as the bankrupt's trustee, or (if she prefers to retain the ring) to pay the plaintiff the sum of $350.